UNITED STATES DISTICT COURT
DISTRICT OF MAINE

U.S. DISTRICT COURT
BANGOR, MAINE
RECEIVED AND FILED
2011 AUG 17 P 1:34
BY_____
DEPUTY CLERK

MICHAEL P. TURCOTTE )
)
Plaintiff )
)
v. )
) Civil Action No. 1:11-CV-00312-DBH
PAUL R. LEPAGE )
in his official capacity as Governor of )
the State of Maine. )
)
Defendant )
)

## PARTIES

Plaintiff: Michael P. Turcotte
24 Cortland Circle
Bangor, Maine 04401

Defendant: Governor Paul R. Lepage
1 State House Station
Augusta, Maine 04333-0001

## JURISDICTION

2. The Plaintiff's complaint is in accordance to 28 U.S.C. 1343 (3) and 28 U.S.C. 2284.

## COMPLAINT

1. The plaintiff, Michael Turcotte ("Plaintiff"), on his own behalf as an independent voter, brings this U.S. constitutional action against Governor Paul Lepage (Defendant), in official capacity as Governor of the

1

State of Maine and vested by the Constitution of Maine with "supreme executive power" *see Article V, Section 1 of State of Maine Constitution*, and alleges the Defendant, by authorizing the Speaker of the Maine House of Representatives to organize the Legislative Apportionment Committee (LAC), tasked with reapportioning the U.S. congressional districts, is in violation of the Plaintiff's constitutional rights under Article I, Section 2 and Section 1, Amendment XIV of the U.S. Constitution The Plaintiff seeks injunctive relief against the LAC, and alternative relief to the LAC.

## "STANDING TO SUE"

3. As a voter, the Plaintiff asserts that his case is justiciable under Baker v. Carr *see 369 U.S. 186* (1962) in which the Supreme Court reversed Colegrove v Green *see 328 U.S. 549* (1946) and referenced it as precedent holding:

> "...squarely held that voters who allege facts proving disadvantage to themselves as individuals have a standing to sue." *See 369 U.S. 207.*

4. In the matter of justiciability, the Plaintiff contends in Snowdell v Hughes *see 321 U. S. 1* the Supreme Court held:

"Where discrimination is sufficiently show, the right to relief under the equal protection clause is not diminished by the fact the discrimination relates to political rights." *See 321 U. S. 12*

5. The Plaintiff asserts that his case is entitled to relief under Reynolds v. Sims *see 377 U.S. 533* (1964) in which the Supreme Court held: "We indicated in Baker...that the Equal Protection Clause provides discoverable and manageable standards for use by lower courts in determining the constitutionality of a state legislative apportionment scheme . . ." *see 377 U.S. 558.*

## ARTICLE 1, SECTION 2

6. The Plaintiff contends that instead of being chosen "by the people of the several states" *see Article 1, Section 2, U.S. Constitution*, the State of Maine's congressional districts are apportioned by the two largest political parties in the state legislature, giving the political parties absolute control of the congressional reapportionment process rather than individual citizens.

7. The Defendant, in authorizing the Speaker of the Maine House of Representatives to organize the LAC under Title 21-A, M.R.S.A, Chapter 15, §1206, Paragraph 1, enjoined with Article IV, Part Third, Section 1-A of the State of Maine Constitution and tasked with reapportionment of U.S.

Congressional districts, denies the Plaintiff "equal representation" *see 376 U. S. 1* in violation of his rights under Article 2, Section 1 of the U. S. Constitution.

8. The Plaintiff asserts that in <u>Wesberry v. Sanders</u> *see 376 U.S. 1* the Supreme Court held:

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right." *See 376 U.S. 18*

9. The Plaintiff also asserts that in <u>Gomillion v. Lightfoot</u> *see 364 U.S. 339* (1960), the Supreme Court held:

"When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right." Further, "...a constitutional power cannot be used by way of condition to attain an unconstitutional result." *See 364 U.S. 348.*

10. The Plaintiff thereby alleges the Defendant, as the supreme executive power of the State of Maine, in authorizing the Speaker of the Maine House of Representatives to organize the LAC, composing of registered voters of the two major political parties in the state legislature, violates the Plaintiff's U.S. Constitutional right of "equal representation" and undermines the Plaintiff's independent vote in order "to attain an unconstitutional result."

## SECTION 1, AMENDMENT XIV

11. The Defendant, in authorizing the Speaker of the Maine House of Representatives to organize the LAC that is tasked with reapportioning the U.S. Congressional districts under Title 21-A, M.R.S.A, Chapter 15, §1206, Paragraph 1, enjoined with Article IV, Part Third, Section 1-A of the State of Maine Constitution, is in violation of Plaintiff's constitutional rights under the privileges and immunities, due process, and equal protection clauses of Section 1 in Amendment XIV of the U.S. Constitution.

### *Privileges and Immunities*

12. The Plaintiff alleges the 1975 *see Maine Constitutional Resolution, 1975, c. 1* passage Section 1-A of the Constitution of the State of Maine authorizing the LAC, that is tasked with the reapportionment of U.S. congressional districts, supersedes the Plaintiff's U.S. constitutional rights

under the "privileges and immunities" clause of Section 1 in Amendment XIV of the U.S. Constitution ratified in 1868. Section 1 in Amendment XIV states:

> "No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States"

### *Due Process*

13. The Plaintiff also alleges the Defendant under Article IV, Part Third, Section 1-A of the Constitution of Maine, denies him, as an independent voter, the opportunity to participate *(due process)* in the reapportionment of Congressional districts in violation of Section 1 in Amendment XIV of the U.S. Constitution by authorizing the Speaker of the Maine House to organize the LAC, which is tasked with the reapportionment of the U.S. congressional districts, with only registered voters of the two major political parties in the State of Maine legislature.

### *Equal Protection*

14. The Plaintiff alleges the Defendant violates his constitutional rights under the "equal protection" clause in Section 1 of Amendment XIV by authorizing the Speaker of the Maine House of Representatives to organize the LAC, tasked with the reapportionment of the U.S. congressional districts, with only registered voters of political parties in the

State of Maine legislature thereby discriminating against the Plaintiff, an independent voter.

15. The Plaintiff contends in <u>Gray v. Sanders</u> *see 372 U.S. 368 (1963)*, the U.S. Supreme Court held:

"The concept of political equality from the Declaration of Independence to Lincoln's Gettysburg Address, to the 15th, 17th, and 19th Amendments can mean only one thing -- one man, one vote." *see 372 U.S. 381*

16. The Plaintiff also contends that in <u>Wesberry v. Sanders</u> *see 376 U.S. 1 (1964)*, the Supreme Court held:

"…construed in its historical context, the command of Art. 1, § 2, that Representatives be chosen 'by the People of the several States' means that as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's." *see 376 U.S. 8-9*

17. As to the relevance of the political parties composing the LAC contradicting the "equal protection" clause of Section 1 in Amendment XIV of the U.S. Constitution, the Plaintiff contends that in <u>Kirkpatrick v. Preisler</u> *see 394 U.S. 526 (1969)*, the Supreme Court held:

"Variances based on the creation of districts with specific interest orientations are contrary to the constitutional requirement of equal representation." *See 394 U.S. 533*

"Consideration of practical or partisan politics cannot justify population disparities." *see 394 U. S. 533-534*

18. Despite the narrow federal guidelines of population parity – "one person, one vote", contiguous and compact, cross political subdivision lines the least number of times necessary to establish as nearly as practicable, and the Voting Rights Act of 1964; the Defendant, as the supreme executive power of the State of Maine Constitution and in authorizing the Speaker of the Maine House of Representatives to organize the LAC tasked with U.S. congressional reapportionment, sanctions registered voters of the two major political parties in the State of Maine legislature to control procedures and prioritize the apportionment of congressional districts to their best interests. Whereas the Plaintiff, an independent voter denied the opportunity to equally participate in the apportionment procedure, is not.

## RELIEF

19. As a citizen of the United States, resident of Maine, and an independent voter, the Plaintiff is requesting relief from Article IV, Part 3rd,

Section 1-A of the Maine Constitution and 21-A M.R.S.A, §1206, Paragraph 1 allowing political parties to determine the apportionment of U.S. House Congressional and Maine House of Representative and Senate districts under Article 1, Section 2 and Amendment XIV, Section 1 of the U. S. Constitution.

20. The Plaintiff requests a temporary restraining order against Governor Paul Lepage as the supreme executive power of the State of Maine in the matter of Article IV, Part Third, Section 1-A of the State of Maine Constitution.

21. The Plaintiff requests a temporary restraining order against the actions of the established Legislative Apportionment Commission (LAC) in the matter of Article IV, Part Third, Section 1-A of the State of Maine Constitution.

22. The Plaintiff requests injunctive relief against the Defendant as the supreme executive power of the State of Maine in the matter of Article IV, Part Third, Section 1-A of the State of Maine Constitution establishing the Legislative Apportionment Commission (LAC).

23. The Plaintiff also seeks alternative relief to the LAC in the form of a Voter's Apportionment Commission (VAC) based on the following:

24. that VAC is sanctioned under Article 1, Section 2, Amendment XIV, Section 1, and the Voting Rights Act of 1964 to conduct the procedural process of reapportioning U.S. Congressional districts in the State of Maine.

25. that the VAC is paneled by registered voters

26. that the VAC works within the federal guidelines of reapportioning U.S. Congressional districts by population parity, contiguous and compact districts, cross political subdivision lines the least number of times necessary to establish as nearly as practicable and, if necessary, adherence to Section 2 of the Voting Rights Act.

27. that the VAC is comprised of 21 – 31 registered voters and 2 – 3 alternates.

28. that a current (or retired) State Supreme Court Justice act as facilitator and or moderator of the VAC proceedings.

29. that voters to VAC are chosen by lottery.

30. that any voter wanting to be on the VAC fills out an entry card at the city/town clerk's office.

31. that the entry card asks the voter his/her name, address, telephone number, e-mail address and, under the penalty of perjury, that he/she are a U.S. citizen and a registered voter.

32. that city/town clerks compile the entry cards for 15 or 30 days.

33. that after a period of 15 or 30 days, the city/town clerks send the entry cards to the Secretary of State's office at the state capitol.

34. that the Secretary of State combines the entry cards and places them into one container.

35. that in the presence of the Attorney General, a Justice of the State Supreme Court, and the Secretary of State, the Maine's Governor is blindfolded and picks out 21 – 31 entry cards – plus two – three alternatives from the container.

36. that alternates to the VAC are allowed to watch but not participate in congressional reapportionment discussions.

37. that if any voter in the VAC is unable to complete participation in the congressional reapportionment, an alternative voter takes his or hers place.

38. that the VAC is given a budget for travel expenses, mapping software, and an independent technician to operate software.

39. that the VAC is given a per diem at the same rate paid to state legislators for every day's attendance at special sessions of the state legislature as defined by state law.

40. that the VAC holds one - two public meetings for comment of preliminary configuration of the congressional reapportionment map.

41. that the VAC finalizes the congressional reapportionment map after public comment.

42. that the final configuration of the congressional reapportionment map is voted on and passed by 2/3 of the VAC.

43. that the VAC sends the final congressional reapportionment map to the Maine State Supreme Court for compliance and validation.

44. that the State of Maine House of Representatives pass the VAC congressional reapportionment map by majority vote.

45. that if the State of Maine House of Representatives fails to pass the VAC congressional reapportionment map by majority voter, the congressional reapportionment map is sent to the Justices of the Supreme Court of Maine to be enacted by decree.

46. that if the State of Maine House of Representatives passes the VAC congressional reapportionment map, the Governor of the State of Maine signs the final congressional reapportionment map into law.

## REFERENCES

Maine Revised Statute, Title 21-A (Elections), Sub-Section 1206 states:

Congressional districts must be reapportioned as follows.

[1995, c. 360, §1 (AMD).]

Procedure. In 1993 and every 10 years thereafter, when the Secretary of State has received notification of the number of congressional seats to which the State is entitled and the Federal Decennial Census population count is final, the Legislative Apportionment Commission, established every 10 years pursuant to the Constitution of Maine, Article IV, Part Third, Section 1-A, shall review the existing congressional districts. If the districts do not conform to Supreme Judicial Court guidelines, the commission shall reapportion the State into congressional districts.

In making such a reapportionment, the commission shall ensure that each congressional district is formed of compact and contiguous territory and crosses political subdivisions the least number of times necessary to establish districts as equally populated as possible. The commission shall submit its plan to the Clerk of the House of Representatives no later than 120 calendar days after the convening of the Legislature in which apportionment is required. The Legislature shall enact the submitted plan of the commission or a plan of its own in regular or special session by a vote of 2/3 of the members of each

house within 30 calendar days after the plan is submitted to the Clerk of the House of Representatives. This action is subject to the Governor's approval, as provided in the Constitution of Maine, Article IV, Part Third, Section 2.

Article IV, Part Third, Section 1-A of the Maine Constitution states:

Section 1-A. Legislature to establish Apportionment Commission; number of quorum; compensation of commission members; commission's budget; division among political parties. A Legislature which is required to apportion the districts of the House of Representatives or the Senate, or both, under Article IV, Part First, Section 2, or Article IV, Part Second, Section 2, shall establish, within the first 3 calendar days after the convening of that Legislature, a commission to develop in accordance with the requirements of this Constitution, a plan for apportioning the House of Representatives, the Senate, or both.

The commission shall be composed of 3 members from the political party holding the largest number of seats in the

House of Representatives, who shall be appointed by the Speaker; 3 members from the political party holding the majority of the remainder of the seats in the House of Representatives, who shall be appointed by the floor leader of that party in the House; 2 members of the party holding the largest number of seats in the Senate, who shall be appointed by the President of the Senate; 2 members of the political party holding the majority of the remainder of the seats in the Senate, to be appointed by the floor leader of that party in the Senate; the chairperson of each of the 2 major political parties in the State or their designated representatives; and 3 members from the public generally, one to be selected by each group of members of the commission representing the same political party, and the third to be selected by the other 2 public members. The Speaker of the House shall be responsible for organizing the commission and shall be chairperson pro tempore thereof until a permanent chairperson is selected by the commission members from among their own num. No action may be taken without a quorum of 8 being present. The

commission shall hold public hearings on any plan for apportionment prior to submitting such plan to the Legislature.

Public members of the commission shall receive the same rate of per diem that is paid to Legislators for every day's attendance at special sessions of the Legislature as defined by law. All members of the commission shall be reimbursed for actual travel expenses incurred in carrying out the business of the commission. The Legislature which is required to apportion shall establish a budget for the apportioning commission within the state budget document in the fiscal year previous to the fiscal year during which the apportioning commission is required to convene and shall appropriate sufficient funds for the commission to satisfactorily perform its duties and responsibilities. The budget shall include sufficient funds to compensate the chairperson of the commission and the chairperson's staff. The remainder of the appropriation shall be made available equally among the political parties represented on the commission to provide travel expenses, incidental expenses and compensation for commission members and for partisan staff and operations.

Article 1, Section 2 of the United States Constitution:

"The House of Representatives shall be composed of members chosen every second year by the people of the several states, and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the State Legislature."

Section 1 of the 14th Amendment of the US Constitution states:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the Untied States; nor shall any state deprive any person of life, liberty, or property without due process of the law; nor deny to any person within its jurisdiction the equal protection of the laws.

Dated this 17th day of August, 2011, in Bangor, Maine.

*[signature]*

Michael P. Turcotte
24 Cortland Circle
Bangor, Maine  04401
Telephone: 207-991-7070
michaelpturcotte@gmail.com