## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **MICHAEL P. TURCOTTE**         ) | |
| )                                                             | |
| Plaintiff,        ) | |
| )                                                             | |
| vs.                                                 ) | **Civil No.:** 11-cv-00312-DBH |
| )                                                             | |
| **PAUL R. LEPAGE**                    ) | |
| )                                                             | |
| Defendant,         ) | |
| )                                                             | |
| )                                                             | |

### MOTION TO DISMISS AND INCORPORATED MEMORANDUM IN SUPPORT THEREOF

Now comes Defendant Governor Paul R. LePage, by and through his attorneys, and moves pursuant to Federal Rule of Civil Procedure 12(b)(1) & (6) for an order dismissing this action on the ground of mootness, as explained in the discussion below.

### BACKGROUND

*Litigation and Legislation.* In March of this year, a suit was filed in federal court challenging the timing of reapportionment of the Congressional districts in Maine. *Desena v. LePage,* 1:11-cv-117-GZS-DBH-BMS. Following briefing, on June 21, 2011, the three-judge panel held that Maine's law allowing for the redistricting to occur after the 2012 congressional elections violated the federal Constitution, *id.* at Docket # 33. In light of that conclusion, and by separate order dated June 22, 2011, *id.* at Docket #34, the panel directed the state defendants to proceed with the process of redistricting in order to remedy the constitutional violation prior to January 1, 2012, the date on which those seeking to run for Congress in Maine could begin circulating petitions to run for office. In particular, in its order, the court "anticipate[d] that the Maine Legislature will complete its redistricting work no later than September 30, 2011," and

that "[t]o the extent that the Maine Supreme Judicial Court plays any role in the redistricting for the 2012 congressional election, [it] will complete its work no later than November 15, 2011." *Id.* Should those efforts fail, the court made clear that it would "proceed with its own reapportionment of Maine's congressional districts" in order to meet the January 1, 2011 deadline. *Id.*

On June 28, 2011, the Maine Legislature adopted a Joint Order establishing a 15-member Commission to Reapportion Maine's Congressional Districts ("the Commission") to make redistricting recommendations to the Legislature. *See* H. P. 1186, Joint Order to Establish the Commission to Reapportion Maine's Congressional Districts (125th Legis. 2011) (copy attached hereto as as Exh. 1). The Speaker of the House of Representatives, the President of the Senate, and the House and Senate leaders of the minority party had authority to and did appoint the members of this Commission. Several public meetings were held. At the last meeting on August 30, each Commission member was given an opportunity to speak and to indicate a preference for a particular plan. All seven Democratic members preferred the Democratic plan, and all seven Republican members supported one or both Republican plans. The Chairman then stated his preference for the Democratic plan. A motion to recommend the Democratic plan was approved by a vote of 8 to 7.

Governor LePage called for a Special Legislative Session to be held on September 27, 2011. At that session, a compromise plan was approved by overwhelming majorities in both chambers of the Legislature, with a final vote of 140-3 in the House and 35-0 in the Senate. Governor LePage signed the plan into law. *See* P.L. 2011, c. 466 (eff. Sept. 28, 2011) (attached as Exh. 2)**.** The population variance between the reconfigured districts is one vote, with the First District having a population of 664,180 and the Second District 664,181.

By order dated October 4, 2011, pursuant to its authority under 21-A M.R.S. § 1206(3) and 4 M.R.S. § 8, the Maine Supreme Judicial Court ordered that any challenges to the enacted redistricting plan be filed on or before October 12, 2011, and if no challenge is filed the plan shall be considered final on that date. *In re 2011 Congressional Redistricting*, Docket No. SJC-11-1 (Procedural Order, dated Oct. 4, 2011) (copy attached as Exh. 3). We have been informed by the Law Court Clerk that no challenges were filed on or before October 12, 2011.

*Present lawsuit.* Mr. Turcotte filed his initial complaint on August 17, 2011. (Docket # 1). On August 19, he filed an amended complaint. (Docket # 6). The amended complaint asserts that the Congressional redistricting process contemplated by the Maine Constitution violates a number of Constitutional provisions. *Amended Complaint,* ¶¶ 6-18. The relief sought, in pertinent part, includes:

> A temporary injunction preventing the legislatively-created redistricting commission from performing its duties in making recommendations. *Id.* at ¶ 21;
>
> The creation of an alternative apportionment commission of 21 – 31 registered voters, with 2 – 3 alternates, to be chosen by lottery, with a current or retired Maine Supreme Court Justice to be the moderator or facilitator. *Id.* at ¶¶ 24-37;
>
> A procedure by which the alternative commission would finalize the congressional reapportionment map by a two-thirds vote, and send it to the Maine House of Representatives. If that body failed to pass the map by a majority vote, the map would then be "sent to the Justices of the Supreme Court of Maine to be enacted by decree." *Id.* at ¶¶ 42 – 45. If the House "passes" the commission's map, the Governor would sign it into law. *Id.* at ¶ 46.

Plaintiff has done nothing since August 19 to pursue his request for relief.

ARGUMENT

**This lawsuit should be dismissed as being moot.**

There are a number of significant problems with the Plaintiff's legal theories and claims for relief. Those need not be addressed, however, because the lawsuit is moot and should be

dismissed. A claim is moot when the Legislature acts in a manner that renders the claim for relief impossible. *See Diffenderfer v. Gomez-Colon,* 587 F.3d 445 (1st Cir. 2009).

Here, Plaintiff sought injunctive relief prescribing a process to achieve the "one person, one vote" constitutional mandate. The Maine Legislature adopted a different process by Joint Order, which is now complete. The Legislature duly enacted a compromise plan, drawing a line between congressional districts that was not recommended by the Commission created by Joint Order. That line certainly comports with the "one person, one vote" constitutional mandate. U.S. Const., Article I, § 2; *Karcher v. Daggett,* 462 U.S. 725, 733 (1983); *White v. Weiser,* 412 U.S. 783, 790 (1973); *Kirkpatrick v. Preisler,* 394 U.S. 526, 531 (1969). The "primary responsibility" for congressional redistricting lies with each state's legislative branch, not the federal courts. *League of United Latin American Citizens v. Perry,* 548 U.S. 399, 414-15 (2006). Being political bodies, state legislatures need not be immune from political motivations in drawing congressional lines. *Id.* at 415-23. So long as the redistricting comports with the "one person, one vote" constitutional requirement, consideration by a state legislature of political issues is not fatal. *Id.*

The relief requested by Plaintiff, quite simply, cannot be granted now. The line is drawn. Plaintiff failed to seek preliminary relief or an expedited judicial process in the present case to press his desire to have an alternative redistricting process. If he wants to challenge the line as not comporting with the federal constitutional requirements, he may attempt to do so but the present suit does not make such a claim. Plaintiff, moreover, could have pressed his concerns, if any, regarding the redistricting line or procedure by availing himself of the opportunity to file a challenge with the Maine Supreme Judicial Court by October 12, 2011, pursuant to that court's

order and 21-A M.R.S. § 1206(3).  He did not do so.  In any event, the present amended complaint should now be considered moot.

## CONCLUSION

      For the reasons stated above, this matter is now moot and should be dismissed.

Dated:  October 17, 2011              WILLIAM J. SCHNEIDER
                                                Attorney General

                                                /s/ Paul Stern
                                                PAUL STERN
                                                Deputy Attorney General
                                                Office of the Attorney General
                                                paul.d.stern@maine.gov
                                                Tel:  (207) 626-8568

                                                /s/ Phyllis Gardiner
                                                PHYLLIS GARDINER
                                                Assistant Attorney General
                                                phyllis.gardiner@maine.gov
                                                Tel.  (207) 626-8830

                                                6 State House Station
                                                Augusta ME  04333-0006

                                                Attorneys for Defendant

## CERTIFICATE OF SERVICE

Deputy Attorney General Paul Stern certifies that he served a copy of this Motion to Dismiss and Incorporated Memorandum of Law by Defendant by first-class mail today on the following:

MICHAEL P. TURCOTTE
24 CORTLAND CIRCLE
BANGOR, ME 04401


Dated:  October 17, 2011			WILLIAM J. SCHNEIDER
						Attorney General


						/s/ Paul Stern
						Paul Stern
						Deputy Attorney General
						Office of the Attorney General
						paul.d.stern@maine.gov
						Tel:  (207) 626-8568

						Attorney for Defendant