UNITED STATES DISTICT COURT
DISTRICT OF MAINE

U.S. DISTRICT COURT
BANGOR, MAINE
RECEIVED AND FILED

2011 NOV -7 P 4: 12

BY_____
DEPUTY CLERK

MICHAEL P. TURCOTTE )
)
    Plaintiff )
)
v. )
)
) Civil Action No: 11-ev-0312-DBH
PAUL R. LEPAGE )
in his official capacity as Governor of )
the State of Maine. )
)
    Defendant )

### REPLY TO DEFENDANT'S MOTION TO DISMISS

Now comes Plaintiff Michael Turcotte's reply to the Defendant Governor Paul R. LePage, by and through his attorneys, on Motion to Dismiss.

### ARGUMENT

The Defendant's argument of "this lawsuit should be dismissed as being moot" based on the actions of the 2011 Legislative Apportionment Commission in congressional redistricting is irrelevant and therefore moot. The Defendant, by and through his attorneys, fails to address the Plaintiff's complaint; specifically, the membership of the congressional redistricting commission itself - not the process or the results. The Plaintiff's contention in his complaint is the discriminatory make-up (membership) of Maine's Legislative Apportionment Commission (LAC), or "the Commission" (*see* Defendant's Exhibit 1), under the U.S. Constitution still remains. Maine's Constitution, Article IV Part Third Section 1-A, clearly states: *(italicized for emphasis)*

1

The commission shall be composed of 3 members from the *political party* holding the largest number of seats in the House of Representatives, who shall be appointed by the Speaker; 3 members from the *political party* hold the majority of the remainder of the seats in the House of Representatives, who shall be appointed by the floor leader that *party* in the House; 2 member of the *political party* holding the largest number of seats in the Senate, who shall be appointed by the President of the Senate; 2 members of the *political party* holding the majority of the remainder of the seats in the Senate, to be appointed by the floor leader of that *party* in the Senate; the chairperson of each of the 2 major *political parties* in the State or their designated representatives; and 3 members from the public generally, one to be selected by each group of the commission representing the same *political party*, and a third to be selected by the other 2 public members. (*Note: Substituting the words "race" or "gender", for "political party" and the discriminatory make-up and nature of "the Commission" becomes even more glaringly obvious.*)

The Procedural Order by the Supreme Judicial Court of the State of Maine (*see* Defendant's Exhibit 3) is first, not within their jurisdiction in a U.S. Constitution complaint and second relates to *post hoc* activity of the Plaintiff's contention and therefore moot.

First. According to the Defendant's Motion to Dismiss (*see* Background), "[o]n June 28, 2011, the Maine Legislature adopted a Joint Order establishing a 15-member Commission to Reapportion Maine's Congressional Districts ("the Commission") to make redistricting recommendations to the Legislature" (*see* Defendant's Exhibit 1). In Defendant's Exhibit 1; Section 2, Sub-section A, 1-6 and Sub-section B clearly demonstrates the Plaintiff's contention of discrimination under Article 1, Section 2 and the "equal protection" clause of Amendment XIV in the U.S. Constitution. Membership

2

to "the Commission" for congressional redistricting is based on a citizen's *political party* affiliation not on the U.S. Constitutional rights of the individual citizen. Further, public membership is selected by "each group of members of 'the Commission' representing the same *political party*".

Second. The Supreme Judicial Court of the State of Maine Procedural Order (Challenge Timing), *see* Defendant's Exhibit 3, "establish[ing] a deadline or filing any challenge to the congressional redistricting plan *enacted by the Legislature*..., is **post hoc** to establishing membership of "the Commission" (*see* Defendant's Exhibit 1) and thus irrelevant, or moot, to the Plaintiff's complaint.

The Defendant, by and through his attorneys, states "Plaintiff sought injunctive relief prescribing a process to achieve the 'one person, one vote' constitutional mandate." First; 'one person, one vote' is NOT a "constitutional mandate" or "constitutional requirement" it is part of an opinion handed down from the U.S. Supreme Court (*see* Gray v. Sanders, 372 U.S. 381). Second; in *Wesberry v. Sanders,* (*see* 376 U.S. 1) the Supreme Court stated:

> We hold that, construed in its historical context, the command of Art. I, § 2, that Representatives be chosen "by the People of the several States" means that as nearly as is practicable one man's vote in a congressional election is to be <u>worth</u> as much as another's.

Here the Defendant, by and through his attorneys, fails to fully understand the context of "one man (person), one vote": it is not only on the basis of parity between congressional districts but the worth of an individual's vote. The Plaintiff contends the worth of his vote is diminished when the Defendant authorizes the Speaker of the Maine House of Representatives to organize the LAC, or "the Commission", with members of

3

*political parties* as described in Article IV, Part Third, Section 1-A of the Maine Constitution. By granting *political parties* special rights over individual citizens, the Defendant denies the Plaintiff, an independent voter, his constitutional right under the "equal protection" of Amendment XIV of the U.S. Constitution the *opportunity* to equally participate in apportionment procedure thus diminishing the worth of the Plaintiff's vote at the ballot box.

The Defendant, by and through his attorneys, states that "[t]he 'primary responsibility' (*see League of Untied Latin American Citizens v. Perry*, 548 U.S. 399, 414-415) for congressional redistricting lies with each state's legislative branch, not the federal courts." However, the Defendant, by and through his attorneys, has failed this court by partially citing the transcript of this case. Justice Kennedy also stated:

> This text, we have explained, "leaves with the States primary responsibility for apportionment of their federal congressional... districts." *Growe v. Emison*, 507 U. S. 25, 34 (1993); see also *Chapman v. Meier*, 420 U. S. 1, 27 (1975) ("[R]eapportionment is primarily the duty and responsibility of the State through its legislature or other body"); *Smiley v. Holm*, 285 U. S. 355, 366–367 (1932) (reapportionment implicated State's powers under Art. I, § 4). *And* "Although the legislative branch plays the primary role in congressional redistricting, our precedents recognize an important role for the courts when a districting plan violates the Constitution. See, e. g., *Wesberry v. Sanders*, 376 U.S. 1 (1964)". *Further*, "Judicial respect for legislative plans, however, cannot justify legislative reliance on improper criteria for districting determinations." (see *League of United Latin American Citizens v. Perry*, 548 U.S. 399, 415-416. 2006)

The U.S. Supreme Court recognizes "an important role for the courts" when "legislative reliance on improper criteria for districting determinations." The Plaintiff

contends the "improper criteria" for membership of Maine's "Commission" resulting in the "determination" of congressional redistricting is in violation of his U.S. Constitutional rights under Article 1, Section 2 and Amendment XIV. In his amended complaint, the Plaintiff cites *Gomillion v. Lightfoot (see* 364 U.S. 339 (1960):

> "When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right."

The Plaintiff contends that Article IV, Part 3rd, Section 1-A of the Maine's Constitution circumvents federally protected right(s).

The Defendant, by and through his attorneys, argue "[t]he relief requested by Plaintiff, quite simply, cannot be granted now." The Plaintiff argues that the timeliness of any and/or all relief sought in his complaint is subject to this court's discretion. Further, it is the Plaintiff's contention that Article IV, Part Third, Section 1-A of the Maine Constitution still remains regardless of any action of the Maine Legislature; and, therefore, still subject to the Plaintiff's complaint.

## CONCLUSION

As stated at the beginning of the argument above, it is the Plaintiff's contention that despite the actions of the LAC and the Maine Legislature, the Defendant, by and through his attorneys, has failed to address the Plaintiff's complaint. Therefore, the Defendant's Motion to Dismiss should be denied.

Dated this 7th day of November, 2011, in Bangor, Maine.

/s/ Michael P. Turcotte
_____
Michael P. Turcotte
24 Cortland Circle
Bangor, Maine 04401
Telephone: 207-991-7070
michaelpturcotte@gmail.com