UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL P. TURCOTTE,          )  | |
|          ) | |
|     Plaintiff,          ) | |
|          ) | |
| v.          ) | 1:11-cv-00312-DBH |
|          ) | |
| PAUL R. LEPAGE,          ) | |
|          ) | |
|     Defendant          ) | |

**RECOMMENDED DECISION**

On August 19, 2011, Michael Turcotte filed an amended complaint requesting that this Court convene a three-judge panel to determine whether 21-A M.R.S. § 1206 and Article IV, Part Three, Section 1-A of the State of Maine Constitution violate Article 2, Section 1 of the United States Constitution when the mechanism for establishing a legislative apportionment commission is made applicable to congressional reapportionment regarding representation in the United States House of Representatives.  Turcotte maintains that Maine's legislative and constitutional scheme relies upon the power of the two major political parties to achieve reapportionment through a legislatively-designated commission, thus negating the voice of nonaligned registered voters in the redistricting process and thereby unconstitutionally diluting the concept of "one man, one vote" in the congressional reapportionment context.   The State has moved to dismiss Turcotte's lawsuit because the legislatively-created commission has completed its work, its plan has been rejected by the Legislature, and the Legislature has itself adopted a compromise plan that fully comports with the "one person, one vote" federal constitutional mandate.  Thus, according to Defendant, Plaintiff's lawsuit has been rendered moot and should be dismissed.  Turcotte argues that because Article IV, Part Three, Section 1-A of the Maine Constitution continues to govern how the Legislature will structure any future legislative

apportionment commission, a viable case or controversy remains for this Court to decide. I now recommend that the Court grant the motion and dismiss this complaint as moot.

Turcotte's amended complaint sought injunctive relief against the Governor of the State of Maine and the Legislative Apportionment Committee tasked with reapportioning the United States congressional districts in the State of Maine. (Am. Compl. ¶ 1 (actually the second numbered paragraph of the complaint), Doc. No. 6.) The primary thrust of Turcotte's complaint is his request that this court construct an elaborate alternative method of selecting members to an apportionment committee. The alternative method would be more desirable to Turcotte because its members would not be designated based upon affiliation with any political party, but rather would be randomly chosen based upon a lottery. (Id. ¶¶ 23-46.) In the body of his amended complaint, Turcotte also requested a temporary restraining order against Governor Paul Lepage and against the established, but now disbanded, Legislative Apportionment Commission. (Id. ¶¶ 20-21.) No further action was taken on this matter until Defendant filed a motion to dismiss on October 17, 2011, taking the position that the entire matter was moot because the congressional reapportionment process had been completed and the congressional districts had been realigned in compliance with the federal constitutional mandate of "one person, one vote." (Mot. to Dismiss at 6, Doc. No. 8.)[1]

This Court, like any federal court, can only decide ongoing cases and controversies and so, if an event occurs that makes it impossible for the federal court to provide some form of meaningful relief, "there is, generally speaking, no case or controversy, and [it] must dismiss the [matter] as moot." Kuperman v. Wrenn, 645 F.3d 69, 72 (1st Cir. 2011). The amended complaint in this action sought three specific forms of relief: separate temporary restraining

---

[1] Attached to Defendant's motion are public record documents establishing these facts, of which the Court may take judicial notice.

orders directed at the Governor and the Legislative Apportionment Commission halting their work, injunctive relief creating an alternative mechanism for selection of members to any legislative apportionment commission, and injunctive relief associated with review of a commission's proposals for congressional redistricting.  Defendant is correct that, to the extent the complaint seeks temporary restraining orders barring the commission from devising a congressional reapportionment scheme or preventing the Governor from implementing any redistricting plan, subsequent events have rendered those issues moot.  A congressional redistricting plan, not the commission's proposal, has been adopted by the State Legislature and no objection to the plan was timely filed with the State Supreme Judicial Court.  The deed is done and the requested relief is impossible to achieve.  Therefore, the claims for restraining orders against the Governor and the Legislative Apportionment Commission are moot.

The primary bedrock principle underlying this litigation is that the states have the primary duty and responsibility to perform the task of congressional reapportionment.  Growe v. Emison, 507 U.S. 25, 34 (1993).  The notion that this Court would craft its own intricate plan for the selection of the members of a "legislative" committee to oversee congressional reapportionment in the first instance, in the absence of any evidence or even any allegation that the plan ultimately crafted by the State of Maine violates the "one person, one vote" mandate, is simply preposterous.   Turcotte now seeks nothing from this Court but an advisory opinion confirming his belief that the creation of a Legislative Apportionment Commission which is primarily controlled by political appointees is unconstitutional.  It goes without saying that a state could devise an alternative method for the selection of the members of a Legislative Apportionment Commission, if it chose to do so, or otherwise construct an alternative method for the task of congressional and/or state legislative redistricting.  Turcotte's remedy is to seek

legislative change and, if necessary, constitutional amendment through the political process. This court is unable to provide Turcotte with meaningful relief as to this aspect of his claim any more than it can render him relief in the form of temporary restraining orders.

In his response to the motion to dismiss, Turcotte clarifies that he is not challenging any legislative reliance on improper criteria for the ultimate redistricting determination and that his challenge is simply that the State of Maine employs "improper criteria for membership of Maine's Commission" without regard to whether the final plan adopted by the State ultimately results in any improper congressional redistricting.  (Pl.'s Response at 4-5, Doc. No. 9.)  Thus, Turcotte contends that as long as the statute and constitutional provision concerning the political affiliation of the members of the Legislative Apportionment Commission remains in existence, his constitutional rights are being violated.  And he maintains this is so despite the fact that the plan ultimately adopted rejected the Commission's proposal and enacted a legislative compromise.  However, Turcotte's amended complaint does not seek declaratory relief on the issue of the constitutionality of the current Maine statutory and constitutional provisions.  Were the amended complaint to seek such relief, it is abundantly plain that the provisions of Maine law pass constitutional muster.  State legislatures are not required to divorce themselves from political motivations in drawing congressional lines.  League of United Latin Am. Citizens v. Perry, 548 U.S. 399, 415-23 (2006).  It stands to reason that if political motivations are not forbidden when making the ultimate decision, there is certainly no constitutional infirmity in allowing them to factor into the composition of a legislatively committee charged with designing the redistricting plan.

## CONCLUSION

Based upon the foregoing, I recommend that the Court GRANT Defendant's Motion to Dismiss (Doc. No. 8) and DISMISS the amended complaint as moot.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

November 30, 2011